UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

UNITED STATES OF AMERICA                               :

                                                                                  :        1:18-cr-00339-PAC-12

       - against -                                             :

                                                                                  :        **OPINION & ORDER**

DAWDU MARRIOTT,                                            :

        Defendant.                                                :

------------------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

       Dawdu Marriott ("Defendant," "Marriott") is a 34-year-old inmate who is serving a 40-month sentence at FCI Danbury Low ("FCI Danbury"). He has a projected release date of October 9, 2022 and a date for transfer to home confinement of April 10, 2022. He now moves *pro se* for compassionate release amid the COVID-19 pandemic citing his personal health conditions and the state of infections at FCI Danbury. The Government opposes the motion on the grounds that while "extraordinary and compelling reasons" are present that permit the Court to grant a sentence reduction, the sentencing factors in 18 U.S.C. § 3553(a) counsel against a reduction for Marriott.

       The motion is DENIED without prejudice to its renewal as circumstances in the pandemic change.

## **BACKGROUND**

       Marriott entered a plea of guilty before Magistrate Judge Gabriel W. Gorenstein on August 19, 2019 to two counts: conspiring to commit wire fraud in violation of 18 U.S.C. § 1349 ("Count Two"), and aggravated identity theft in violation of 18 U.S.C. § 1028A ("Count Three").

Minute Entry dated Aug. 19, 2019; Presentence Report ("PSR"), Dkt. 264, at 1.  The PSR prepared by the Probation Department set the Offense Level at 18 and the Criminal History Category at III, yielding statutory provisions of 20 years, Guidelines of 33 to 41 months, and a recommended sentence of 33 months on Count Two.  PSR, Dkt. 264, at 28.  An additional mandatory and consecutive term of 24 months applied on Count Three, resulting in a total recommended sentence of 57 months.  *Id.*

On December 19, 2019, the Court imposed a sentence of 16 months on Count Two and 24 months to run consecutively on Count Three, for a total sentence of 40 months.  Judgment, Dkt. 267, at 2;  Sent'g Tr., Dkt. 279, at 9:21–10:6.

## DISCUSSION

I.   **Applicable Law**

A.  *Pro Se* **Motions**

A filing made "*pro se* is to be 'liberally construed,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and "interpreted 'to raise the strongest arguments that [it] suggest[s].'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

B.  **Compassionate Release Standard**

The compassionate release statute at 18 U.S.C. § 3582(c)(1)(A)(i) provides a limited exception to the general rule that a court may not modify a term of imprisonment once it has been imposed.  *United States v. Franco*, 12 Cr. 932 (PAC), 2020 WL 4344834, at *1 (S.D.N.Y. June 24, 2020); *United States v. Morel*, 10 Cr. 798 (PAC), 2020 WL 3412907, at *2 (S.D.N.Y. June 22, 2020).  The statute, as amended by the First Step Act of 2018, permits an incarcerated individual to make a motion for compassionate release on his own behalf either after "fully

exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

If that exhaustion requirement has been met, a court may then determine whether "extraordinary and compelling reasons warrant . . . a reduction" in the defendant's sentence. 18 U.S.C. §3582(c)(1)(A)(i). If such reasons are present, the court then has discretion to grant a reduction "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable" and if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The applicable policy statement is found at U.S.S.G. § 1B1.13.[1]

---

[1] Application Note 1 to U.S.S.G. § 1B1.13 addresses what constitutes extraordinary and compelling reasons:

> (A) Medical Condition of the Defendant
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).
>>
>> (ii) The defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> . . .
>
> (D) Other Reasons—As determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

"In the course of weighing the various priorities embodied in the policy statement and the factors in 18 U.S.C. § 3553(a), courts in this district have engaged in a factually intensive, case-specific inquiry into, *inter alia*, the health of the defendant, the threat of COVID-19 exposure at his facility, and whether a reduction would compromise the goals of the imposed sentence." *United States v. Van Praagh*, 1:14-cr-00189-PAC-1, 2020 WL 3892502, at *3 (S.D.N.Y. July 10, 2020).

### C. Application

#### A. Exhaustion

Marriott filed a request for compassionate release on May 18, 2020 with the warden of his facility, which was then rejected by the BOP on May 21. Dkt. 322, at 5. He filed a second request with his warden on July 14, and this too was denied. *Id.* Accordingly, the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A) have been met.

#### B. Extraordinary and Compelling Reasons

Marriott writes that he "suffers from hypertension, sleep apnea (causing respiratory issues) and obesity (260+ lbs)." Dkt. 320, at 2. He says he shares his dorm at FCI Danbury with more than 60 other inmates, that social distancing is impossible under these conditions, and that there have been seven positive cases of COVID-19 in his unit. *Id.* Marriott asserts that the conjunction of his own health conditions and the presence of COVID-19 at FCI Danbury generally and in his unit specifically, along with the impracticability of precautionary measures in a prison environment, put him at "serious medical risk" and present a "mortal danger," constituting "extraordinary and compelling reasons" that permit a sentence reduction. *Id.* at 2–3.

The Government concedes that the required "extraordinary and compelling reasons" permitting a sentence reduction are present here, Dkt. 322, at 13, and the Court independently

4

finds that Marriott's health conditions, the state of infections at his facility, and the particular risk posed to him by COVID-19 constitute "extraordinary and compelling reasons" that satisfy 18 U.S.C. § 3582(c)(1)(A)(i).

### C. Section 3553(a) Factors

The Government opposes a reduction in Marriott's sentence because "the § 3553(a) factors weigh against release, including that the defendant poses a significant risk of recidivism and danger to the community, and because it is far from the clear that the release plan the defendant proposes would reduce his risk of contracting COVID-19." Dkt. 322, at 6. The Government argues that a sentence reduction for Marriott would undermine the specific and general deterrence objectives of the imposed sentence, and would fail to account for Marriott's role in the fraud scheme in which he took part. Dkt. 322, at 14.

Marriott counters that his conduct in prison is in his favor, and that he "has spent the past months evaluating the decisions that led to his incarceration and has come to the realization that nothing is worth being away from his son and family." Dkt. 320, at 2. He further submits a reentry plan under which he would reside with his father in East Stroudsburg, Pennsylvania during his period of supervised release. Dkt. 320, at 4.

He also asserts that he is "a non-violent first-time offender" whose "traffic violations and misdemeanors are indicated" in his PSR. Dkt. 320, at 4. As the Government responds, this is not a complete representation of the record. Dkt. 322, at 15. In fact, as the Government and the PSR recount, and as the Court accounted for at sentencing, Marriott "has a very extensive criminal record." Sent'g Tr., Dkt. 279, at 9:11; Dkt. 322, at 15. Unmentioned by the Government, however, is that the Court went on to observe that "a lot of those sentences are for minor crimes and a lot of them for traffic infractions." Sent'g Tr., Dkt. 279, at 9:13–14. The

Court also said, "I've always felt that the enhancement that is granted because of crimes committed while on probation is really a double whammy," and reset Marriott's Criminal History Category at II.  *Id.* at 9:14–17.

      Still, in light of all the circumstances, the Court agrees with the Government here that to grant Marriott a reduction now, when he has only served nine months of his 40-month sentence, would be to award him "an undue windfall that would severely undermine the goals of the sentence this Court imposed."  *United States v. Brady*, S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020).  The priorities the Court expressed at sentencing—"a sentence that reflects the seriousness of the offense, which promotes respect for the law, and provides just punishment for the offenses to which Mr. Marriott has pled guilty"—remain the same.  Sent'g Tr., Dkt. 279, at 8:17–20.  A reduction therefore is not appropriate for Marriott where he has only served about a quarter of his imposed sentence.  *See Morel*, 2020 WL 3412907, at *4 ("Courts have been more inclined to grant motions for compassionate release where defendants have completed a sufficient portion of their sentence (often two thirds or three quarters) such that the court can be satisfied that the aims of the original punishment have been met.") (collecting cases).

## **CONCLUSION**

Marriott's motion for compassionate release is DENIED without prejudice to its renewal should circumstances amid the COVID-19 pandemic change. The Clerk of Court is directed to close the motion at Docket 320.

Dated: New York, New York
      August 19, 2020

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge